# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **SHERRA BURNETT,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION FILE NO.** |
| | : | |
| **FULTON COUNTY** | : | **1:07-CV-0300-JTC-AJB** |
| **SCHOOL DISTRICT,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## ORDER FOR SERVICE OF
## REPORT AND RECOMMENDATION

Attached is the Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b), and N.D. Ga. R. 72.1(D)(2). Let the same be filed and a copy, with a copy of this order, be served upon counsel for the parties or, if a party is not represented, upon that party directly.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within ten (10) days of receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for

AO 72A
(Rev.8/8
2)

obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review.  *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this the __6th__ day of __May__, 2008.

 

**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHERRA BURNETT, *et al.*,                    :
                                             :
        Plaintiffs,                          :
                                             :
    v.                                       :   CIVIL ACTION FILE NO.
                                             :
FULTON COUNTY                                :   1:07-CV-0300-JTC-AJB
SCHOOL DISTRICT, *et al.*,                   :
                                             :
        Defendants.                          :

UNITED STATES MAGISTRATE JUDGE'S
NON-FINAL REPORT AND RECOMMENDATION

Currently before the Court is Defendants' Motion to Dismiss Plaintiff's

Amended Complaint, construed as a motion for judgment on the pleadings.[1] [Doc. 45].

---

[1]    A motion to dismiss for failure to state a claim "shall be made before pleading if a further pleading is permitted." FED. R. CIV. P. 12(b). Defendants filed their answers to Plaintiffs' amended complaint on October 19, 2007, [*see* Docs. 34-44], and they filed their motion to dismiss seven days later on October 26, 2007, [Doc. 45]. As such, the motion to dismiss is untimely. Instead of recommending dismissal of the motion to dismiss on timeliness grounds, the undersigned construes Defendants' motion to dismiss as a motion for judgment on the pleadings pursuant to Rule 12(c). *See* FED. R. CIV. P. 12(h) (noting that "a defense of failure to state a claim . . . may be made . . . by motion for judgment on the pleadings"); *Skrtich v. Thornton*, 280 F.3d 1295, 1307 n.13 (11th Cir. 2002) (noting that "a [Rule 12(b)(6)] motion [to dismiss] *may* be construed as a request for judgment on the pleadings pursuant to [Rule] 12(c)") (emphasis in original); *see also Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citing cases and "accept[ing] the overwhelming weight of authority that a motion to dismiss for failure to state a claim . . . that is styled

For the reasons set forth herein the undersigned **RECOMMENDS** that the motion to dismiss, construed as a motion for judgment on the pleadings, be **GRANTED IN PART and DENIED IN PART**.

### *Procedural History*

On February 2, 2007, seven females all but one of whom are African-American - - Sherra Burnett, Felicia Hedgebeth, Susan Hertwig,[2] Barbara McGuire, Gloria Parker, Cynthia Williams, and Michele Williams (collectively "the Plaintiffs") - - filed a three-count civil action against the Fulton County Board of Education ("FCBE") and the following twelve individuals in their official and individual capacities: (1) Julia Bernath, a white female and President of the FCBE; (2) Linda Bryant, an African-American female and Vice-President of the FCBE; (3) Linda Schultz, a white female and member of the FCBE; (4) Katie Reeves, a white female and member of the FCBE; (5) Gail Dean, a white female and member of the FCBE; (6) Ashley Widener, a white female and member of the FCBE; (7) Catherine Maddox, a white female and member of the FCBE; (8) James Wilson, a white male and Superintendent of the Fulton County

---

as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)") (footnote omitted).

[2]     Hertwig is a caucasian female.

2

School District; (9) Patty Rooks, a white female and Assistant Superintendent of Elementary Curriculum and Instruction of the Fulton County School District ("FCSD"); (10) Ronnie Wade, an African-American male and Assistant Superintendent of Secondary Curriculum and Instruction for the FCSD at the relevant time; (11) Catherine White, a white female and the Executive Director of the Professional Development Department of the FCSD; and (12) Katie Lovett, a white female and Chief Information Officer of the FCSD.  [Doc. 1].  Plaintiffs alleged violations of their (1) Equal Protection rights under the Fourteenth Amendment, in violation of 42 U.S.C. § 1983, (Count 1), and (2) Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), (Counts 2-3).  [*Id.* ¶¶ 87-97].

Defendants moved to dismiss Plaintiffs' complaint on April 6, 2007,  [Doc. 15], and on May 7, Plaintiffs filed a motion for leave to amend their complaint with a proposed amended complaint attached to it, [Doc. 23].  On August 24, 2007, the District Court granted Defendants' motion to dismiss without prejudice and granted Plaintiffs' motion for leave to amend the complaint.  The Court did not permit, however, Plaintiffs to file the proposed amended complaint attached to their motion for leave to amend, but instead ordered Plaintiffs to file an amended complaint on or before September 7, 2007.  [Doc. 30].

3

Plaintiffs then filed a three-count amended complaint on September 7, 2007, against Bernath, Bryant, Schultz, Reeves, Dean, Wilson, Rooks, Wade, White, and Lovett in their individual capacities (collectively "the individual Defendants").[3] They also named the FCSD as a Defendant instead of the FCBE. [Doc. 31]. Plaintiffs alleged that all Defendants violated their rights under the Equal Protection Clause of the Fourteenth Amendment, in violation of § 1983, (Count 1). [*Id.* ¶¶ 88-98]. Plaintiffs

---

[3]    The amended complaint did not name Widener and Maddox as Defendants. Defendants contend that they should be dismissed because there are no allegations against them. Alternatively, Defendants move to dismiss Widener and Maddox pursuant to FED. R. CIV. P. 21. [Doc. 45 at 3 n.2].

The Court concludes that with the filing of Plaintiffs' amended complaint, Widener and Maddox are no longer parties to this action. An amended complaint supersedes the initial complaint. *See Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint."); *Varnes v. Local 91, Glass Bottle Blowers Association of the United States*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading."). Thus, Plaintiffs' failure to name Widener and Maddox in their amended complaint means that Plaintiffs have voluntarily dismissed them as Defendants from this action. *See Jackson v. Kemp*, No. CV 307-023, 2008 WL 282468 at *1, 3 (S.D. Ga. Jan. 31, 2008) (dismissing defendants not named in amended complaint); *see also Barnes v. United States*, 111 Fed. Appx. 441, 443 (8th Cir. Aug. 27, 2004) (noting that defendants had been dismissed from the lawsuit by virtue of their absence for plaintiff's amended complaint); *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1101 (S.D. Cal. 2006) ("An amended complaint that drops a defendant named in the original complaint effectively dismisses that defendant from the action."). The undersigned therefore **RECOMMENDS** that Widener and Maddox be **DISMISSED** as Defendants from this case.

4

also alleged that the FCSD terminated the African-American Plaintiffs on the basis of their race and Hertwig on the basis of her association with African-Americans, in violation of Title VII, (Count 2). [*Id.* ¶¶ 99-104]. Finally, Plaintiffs Hertwig, McGuire, and Burnett alleged that the FCSD terminated them in retaliation for complaining about Defendant White's discriminatory conduct, in violation of Title VII, (Count 3). [*Id.* ¶¶ 105-06].

The Defendants filed answers on October 19, 2007. [Docs. 34-44]. The individual Defendants then filed a motion to dismiss on October 26, 2007. [Doc. 45]. Plaintiffs filed a response on December 12, 2007, [Doc. 53], and the individual Defendants filed a reply on January 14, 2008, [Doc. 56].

5

AO 72A
(Rev.8/8
2)

*Facts*[4]

The FCSD, the former employer of Plaintiffs, has 86,659 students enrolled in Fulton County schools, 45 percent of whom are African-American or Hispanic. [Doc. 1 ¶ 2]. The FCSD entered a unitary status agreement in federal court indicating that the school district could not discriminate on the basis of, *inter alia*, race in making employment decisions affecting school staffing. [*Id.* ¶ 3]. The FCSD has "lavished funding" on the schools in the predominantly white schools to the detriment of the predominantly Hispanic and African-American schools. [*Id.* ¶ 4]. The FCSD anticipated an $86,000,000 deficit for the 2006-2007 school year. [*Id.* ¶ 5]. Between March and April of 2006, the FCSD engaged in a reduction in force ("RIF"), resulting in the termination of 45 employees at the central and satellite offices of the FCSD. [*Id.* ¶ 6]. Of those fired, 42 (or 93 percent) were African-American, including six of

---

[4] In evaluating a motion to dismiss, the Court accepts the factual allegations in the complaint as true and construes these facts and any inferences in a light most favorable to the plaintiff. *WESI, LLC v. Compass Envtl., Inc.*, 509 F. Supp. 2d 1353, 1357 (N.D. Ga. 2007); *Burstein v. First Penn-Pacific Life Ins. Co.*, 209 F.R.D. 674, 676 (S.D. Fla. 2002). The standard is the same when ruling on a motion for judgment on the pleadings. *Camafel Bldg. Inspections, Inc. v. BellSouth Advertising & Publishing Corp.*, Civil Action File No. 1:06-cv-1501-JEC, 2008 WL 649778, * 5 (N.D. Ga. Mar. 7, 2008) ("In ruling on a motion for judgment on the pleadings, the Court assumes all well-pled allegations are true and construes all facts and inferences in favor of the non-moving party.") (citing *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005).

6

AO 72A
(Rev.8/8
2)

the seven Plaintiffs.  [*Id.* ¶¶ 7, 34].  The termination of these African-American employees was part of an official government policy or custom that discriminates against non-caucasian employees and their associates.  [*Id.* ¶¶ 8, 33].

The FCSD Board Members - - Bernath, Bryant, Schultz, Reeves, and Dean (collectively "Board Members") - - have an unofficial policy or custom of hiring and firing employees based on race.  [*Id.* ¶¶ 24, 33].  More than one of these Board Members has expressed concern about the racial composition of the central office and stated a need for more caucasian employees and fewer African-American employees. These comments have been made in the presence of other Board members who did not object to the custom or policy.  These Board Members authorized the RIF and supervised or approved the execution of the policy by Rooks, Wade, White and Lovett who participated in the RIF knowing that it was discriminatory.  [*Id.* ¶ 33]. Wilson, the Superintendent, signed off on the list of those who were terminated in the RIF. [*Id.* ¶ 87].

Following the RIF, each Plaintiff filed a charge of discrimination with the EEOC in May of 2006.  [*Id.* ¶ 35].

7

### A.    Sherra Burnett

Burnett, a 52-year old African-American female, began working for the FCSD in October 1992.  She most recently worked as the Professional Assistant to Plaintiff Hertwig, who was the Administrator of the FCSD's Professional Learning Programs.  As a result, Burnett managed a resource center for teachers in the southern portion of Fulton County.  [*Id.* ¶ 44].  When Defendant White became Burnett's supervisor in August 2005, White harassed Burnett based on race and made arbitrary changes to how Burnett ran the teaching center.  [*Id.* ¶¶ 45-47].  White treated Burnett's caucasian counterpart, Beckey Jones, more favorably.  [*Id.* ¶ 48].  On March 29, 2006, Burnett filed an employee complaint against White with the FCSD's Chief of Human Resources ("HR"), alleging racial discrimination and a hostile work environment.  [*Id.* ¶ 49].  On April 13, 2006, Plaintiff learned that the FCSD had terminated her, but not Jones who had less seniority, allegedly because of the RIF.  [*Id.* ¶¶ 50-51].  The decision to terminate Plaintiff and retain Jones was made by Defendants Wade, Rooks, and White at the direction of the Board Members.  [*Id.* ¶¶ 50-51].  Also, White, Wade, and Rooks under the direction and approval of the Board Members initially terminated Frances Callum, a caucasian professional assistant, but reinstated Callum, not Burnett. [*Id.* ¶ 51].

8

### B.    Felicia Hedgebeth

Plaintiff Hedgebeth is an African-American female who began working for the FCSD on January 3, 2001, as a Technology Specialist II.   Hedgebeth was then promoted to a Technology Specialist III position.  [*Id.* ¶ 52].  Hedgebeth learned on April 13, 2006, that the Board Members directed Defendant Lovett to terminate her, but directed and approved of Lovett's decision to retain Jason Brown, a white male with less seniority than Plaintiff, as a Technology Specialist III.  [*Id.* ¶ 53].

### C.    Susan Hertwig

Plaintiff Hertwig, a white female, began working for the FCSD in August 1987. She worked nine years as an Administrator of the Professional Learning Program for the FCSD, which required her to coordinate teacher certification.  [*Id.* ¶ 54].  Hertwig worked closely with Plaintiff McGuire and had visible friendships and professional relationships with several African-American colleagues.  [*Id.* ¶ 55].  When the FCSD hired Defendant White, Hertwig fell under White's supervision.  [*Id.* ¶ 56].  During a meeting between White and Judi Gullat, another FCSD employee, White directed Gullat to inform Hertwig that White would not work with Hertwig if she continued to be friends with Plaintiff McGuire.  [*Id.* ¶ 57].  White harassed Hertwig because of her friendships with African-American employees.  White also eliminated Hertwig's job

9

responsibilities. [*Id.* ¶¶ 58-59]. Hertwig filed an HR grievance against White on March 10, 2006, and then filed a formal HR complaint against White on March 26 in which Hertwig described White's harassment, intimidation, and reduction of Hertwig's responsibilities and complained of White's unprofessional conduct toward African-American employees. [*Id.* ¶¶ 60-61]. On April 12, 2006, Hertwig received an "unsatisfactory" job evaluation from White, and she learned of her termination one day later due to an alleged RIF. [*Id.* ¶¶ 62-63]. This termination decision was made by Wade, Rooks, and White at the direction of the Board Members. [*Id.* ¶ 63].

### D.    *Barbara McGuire*

Plaintiff McGuire, an African-American female, became a FCSD employee in July 1990 as an Assistant Principal, and after one year became a Principal. After holding the position of Principal for 10 years, Plaintiff became the Coordinator of the FCSD's Department of Professional Learning. [*Id.* ¶ 66]. After the FCSD hired White, McGuire came under White's supervision after which White repeatedly intimidated and harassed McGuire based on her race, reduced McGuire's supervisory duties, prevented McGuire from attending meetings, and directed McGuire to move offices without providing assistance. [*Id.* ¶¶ 67, 69-71]. In a February 28, 2006, meeting, White informed Jones that she planned on terminating McGuire. [*Id.* ¶ 75]. On March 10,

10

AO 72A
(Rev.8/8
2)

McGuire filed a grievance with HR against White, and then on March 26, McGuire filed a formal complaint against White, indicating that White's harassment appeared to be racially motivated. [*Id.* ¶¶ 76-77]. McGuire received an "unsatisfactory" rating for her annual evaluation on March 28. [*Id.* ¶ 78]. McGuire was then informed that she was terminated on April 13. This decision was made by Defendants Wade, Rooks, and White at the direction of the Board Members. [*Id.* ¶ 79]. Kathleen Yarbrough, a white female, continued to work as a Professional Learning Teacher Facilitator for the FCSD, despite having less seniority and experience than McGuire. [*Id.* ¶ 80].

### E.    Gloria Parker

Gloria Parker, an African-American female, began working for the FCSD in August of 1988. During the period relevant to the instant litigation, Parker worked as a Professional Assistant III to the Coordinator for Community and Adult Education. [*Id.* ¶ 81]. Parker learned on April 13 that she was being terminated. Other caucasian professional assistants with less seniority were retained, including Frances Callum, a white female. The decision to terminate Parker and retain Callum was made by Defendants Wade and Rooks at the direction of the Board Members. [*Id.* ¶ 82].

11

### F.     Cynthia Williams

Williams, an African-American female, began working for the FCSD in January 1989.  During the relevant period, Williams worked as Coordinator of Community Adult Education for the FCSD.  [*Id.* ¶ 83].  Williams learned that the FCSD was terminating her on April 13, 2006, as part of a RIF.  A caucasian coordinator and teacher facilitator with less seniority than Williams was retained.  The decision to terminate Williams and retain the white comparator was made by Wade and Rooks at the direction of the Board Members.  [*Id.* ¶ 84].

### G.     Michelle Williams

Williams, an African-American female, began working for the FCSD in September 1999 as Professional Assistant to the Media Services Department. [*Id.* ¶ 85].  Williams learned on April 13, 2006, that she would be terminated as part of a RIF, but that the FCSD would retain a white comparator.  Wade and Rooks at the direction of the Board Members made the decision to terminate Williams and retain her comparator.  [*Id.* ¶ 86].

### *Discussion*

Defendants raise four arguments in their motion to dismiss.  First, they argue that Plaintiffs' amended complaint should be dismissed against the individual Defendants

12

AO 72A
(Rev.8/8
2)

because the amended complaint does not meet the heightened pleading standard for § 1983 cases against the individual Defendants. [Doc. 45 at 11-15]. Second, they argue that because Plaintiffs' amended complaint is a shotgun pleading it should be dismissed. [*Id.* at 15]. Third, they contend that Plaintiffs' punitive damages claims should be dismissed because the claims against the individual Defendants should be dismissed. [*Id.* at 15-16]. Finally, Defendants argue that Plaintiffs' amended complaint should be dismissed because it violates FED. R. CIV. P. 10(b) and the District Court's Order. [*Id.* at 16-18]. The Court addresses these four arguments separately.

### A.   *Individual Defendants*

#### 1.   *The Parties' Contentions*

Defendants contend that qualified immunity bars all claims against the individual Defendants because Plaintiffs have not alleged specific facts under the Eleventh Circuit's heightened pleading standard. [Doc. 45 at 9-15]. First, Defendants assert that Plaintiffs have alleged insufficient facts about any of the alleged comparators to establish constitutional violations by the individual Defendants. [*Id.* at 11-13]. Defendants complain that the amended complaint is insufficient for Plaintiffs Cynthia Williams and Michelle Williams because it does not identify any similarly situated individuals. [*Id.* at 12]. Defendants also argue that the named comparators for Burnett,

13

Parker, Hedgebeth, Hertwig, and McGuire are not similarly situated because they had different job titles or no job titles. [*Id.* at 12-13].

Second, Defendants argue that the allegations against the Defendants are not specific because Plaintiffs merely lump them together in paragraph 33 of the amended complaint and in Count 1. [*Id.* at 13]. Third, Defendants argue that the allegations against the individual Defendants are insufficient because Plaintiffs never allege that any of the individual Defendants acted with discriminatory intent and the discriminatory animus of one or a few board members is insufficient to establish municipal liability under § 1983. [*Id.*]. Fourth, Defendants contend that the allegations against Wilson are insufficient because: (1) they fail to show that he personally participated in any discriminatory action but instead rely on a respondeat superior theory; and (2) they do not tie Wilson to any constitutional deprivation. [*Id.* at 13-14].

Plaintiffs first respond that recent Supreme Court precedent in *Jones v. Bock*, 127 S. Ct. 910, 919-20 (2007), throws the Eleventh Circuit's heightened pleading standard for § 1983 claims against individual defendants in doubt. [*See* Doc. 53 at 10-11]. Plaintiffs then argue that even if the heightened pleading standard survives *Jones v. Bock*, their amended complaint meets this heightened pleading standard for six reasons. [*Id.* at 11-18]. First, Plaintiffs contend that their allegations about being

14

AO 72A
(Rev.8/8
2)

terminated pursuant to an unofficial policy of race discrimination while caucasian counterparts were retained establishes a constitutional violation. [*Id.* at 13]. Second, they contend that without discovery they should not be required to identify specific comparators by name or show exactly how alleged comparators are similarly situated to them. [*Id.* at 15]. Plaintiffs contend that the mere fact that alleged comparators have different job titles does not automatically render them inappropriate comparators. [*Id.* at 15-16]. Third, Plaintiffs contend that Count 1 of the amended complaint does not merely lump the individual defendants together because the paragraphs in Count 1 identify which Defendants are being accused of constitutional violations. [*Id.* at 16]. Fourth, Plaintiffs contend that they alleged facts that the individual Defendants acted with discriminatory intent by noting that: (1) the Board Members collectively developed and/or acquiesced to an unofficial policy of discrimination; (2) Wade, Rooks, White, and Lovett were aware of the policy and supported it through their termination decisions; and (3) Williams was aware of the policy yet still reviewed and approved the terminations. [*Id.* at 17]. Fifth, Plaintiffs argue that the collective treatment of the Board Members is appropriate because they acted collectively as the FCBE. [*Id.* at 17-18]. Finally, Plaintiffs argue that the claims against Wilson are sufficient because they show he participated in the terminations. [*Id.* at 18]. Plaintiffs

15

also argue that the allegations show that Wilson is liable under the cat's paw theory. [*Id.* at 8 n.7].

Defendants first reply that the Eleventh Circuit has consistently applied the heightened pleading standard in § 1983 cases against individual defendants. [Doc. 56 at 2]. They argue that the Supreme Court's case law did not abolish the heightened pleading standard in § 1983 cases because: (1) *Jones* is distinguishable in that it involved a case under the Prison Litigation Reform Act ("PLRA"); and (2) *Swierkiewicz v. Sorema, N. A.*, 534 U.S. 506 (2002), also cited by Plaintiffs, is distinguishable in that it involved Title VII and ADEA claims against a corporation. [*Id.* at 3-4].

Second, Defendants argue that Plaintiffs' concession that they did not identify comparators for the Williamses prevents these two Plaintiffs from asserting a constitutional violation. [Doc. 56 at 4-6]. Third, Defendants assert that because the job titles of the comparators for Hertwig, McGuire, and Hedgebeth were different than these Plaintiffs, the three Plaintiffs have not alleged a constitutional violation since they have not set forth sufficient facts about similarly situated employees. [*Id.* at 6-7]. Fourth, Defendants argue that Defendant Wilson is entitled to qualified immunity because the factual allegations are insufficient to raise a § 1983 claim in that there are

16

no allegations that Wilson knew of the Board's discriminatory basis for the RIF decisions. [*Id.* at 7-9].

Fifth, Defendants argues that the § 1983 claims against the Board Members must be dismissed because Plaintiffs' allegations do not individually identify which Board Members acted with discriminatory animus but merely allege that unnamed Board Members authorized the RIF. [*Id.* at 9-10]. Defendants reiterate that the animus of one Board Member is insufficient to ascribe discriminatory purpose to the entire Board. [*Id.* at 10]. Defendants also contend that Plaintiffs' reliance on *Kyle v. Chapman*, 208 F.3d 940 (11th Cir. 2000), is misplaced because the case is distinguishable in that the individual defendants in *Kyle* were direct care personnel of the plaintiff while it is unclear how the Board Members knew that Plaintiffs' terminations in the RIF were race-based. [*Id.* at 11].

Sixth, Defendants argue that the claims against Defendants Rooks, Wade, Lovett, and White must be dismissed because Plaintiffs have not alleged violations of constitutional rights against them. [*Id.* at 12]. Defendants assert that Plaintiffs' allegations that these four Defendants participated in the RIF despite knowing that it was discriminatory is insufficient under the heightened pleading standard because there

17

AO 72A
(Rev.8/8
2)

are no allegations about how they were informed about the custom or how they knew

of the custom.  [*Id.* at 13].[5]

---

⁵        The Court does not address these arguments because for the first time in Defendants' reply brief, Defendants argue that Plaintiffs' factual allegations in the amended complaint against Rooks, Wade, Lovett, and White were insufficient to state equal protection claims.  [Doc. 56 at 12-13].  The Court recognizes that  Defendants asserted in one sentence of their initial brief under the "Allegations of Amended Complaint" heading of the "Statement of Facts" section that, "[t]urning to the factual allegations relating to Defendants Rooks, Wade and White, the Plaintiffs set forth no new significant facts to establish their individual liability."  [Doc. 45 at 5].  The initial brief failed to provide any arguments to explain this declaration in the "Argument and Citation of Authority" section of the brief.  [*See generally* Doc. 45 at 8-18].  As a result, the Court finds that Defendants' arguments concerning Rooks, Wade, Lovett, and White in their reply brief are not properly before the Court.  *See Reliance Ins. Co. of Ill., Inc v. Richfield Hospitality Servs., Inc.*, 92 F. Supp. 2d 1329, 1332 (N.D. Ga. 2000) ("In general, a court should not consider arguments raised for the first time in a reply brief."); *United States v. Ga. Dep't of Natural Res.*, 897 F. Supp. 1464, 1471 (N.D. Ga. 1995).  The Court, therefore, does not address this argument.  This finding does not mean, however, that Plaintiffs claims may proceed against Rooks, Wade, Lovett, and White.  Instead these four defendants are entitled to qualified immunity.  As discussed below, Plaintiffs have failed to sufficiently plead allegations to show that comparators are similarly situated in all relevant respects, thereby preventing Plaintiffs from asserting equal protection claims against any of the individual Defendants.  Without sufficiently pleading constitutional violations, all Defendants are entitled to qualified immunity.

The Court further notes that if the District Court does not adopt the undersigned's recommendation that Plaintiffs' have not pleaded sufficient facts to establish similarly situated individuals, then the § 1983 equal protection claims against Rooks, Wade, Lovett, and White remain.

The Court finally notes that if Defendants want to raise the insufficiency of the pleadings as to Rooks, Wade, Lovett, and White, they may do so in objections to the

18

### 2.      *Motion for Judgment on the Pleadings Standard*

"A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss."  *WESI, LLC*, 509 F. Supp. 2d at 1357 (quoting *Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta*, 864 F. Supp. 1274, 1278 (N.D. Ga. 1994)); *see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002); *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007); *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007).  A court will grant a FED. R. CIV. P. 12(c) motion for judgment on the pleadings if a plaintiff "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(h)(2) (2006).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

---

report and recommendation.  The Eleventh Circuit has held that a "district court was not barred from considering an argument [of the defendants] that had not been presented to the magistrate judge" in a dispositive motion.  *Stephens v. Tolbert*, 471 F.3d 1173, 1176-77 (11th Cir. 2006).  The Court notes, however, that there is no requirement that the district court consider any new arguments raised by Defendants.  *Id.* at 1176 ("We need not decide whether a district court must consider an argument that had not been presented to the magistrate judge . . . .").  The Court further notes that if Defendants raise new arguments concerning the sufficiency of the allegations against Rooks, Wade, White, and Lovett, Plaintiffs may seek to argue that Defendants are judicially estopped from raising the new argument.  *See id.* at 1177.

19

FED. R. CIV. P. 8(a)(2).  "Such a statement must simply 'give the defendant fair notice

of what the plaintiff's claim is and the grounds upon which it rests.'"  *Swierkiewicz*,

534 U.S. at 512 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, (1957), *abrogated on other

grounds by Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007)[6]).  "Rule 8(a)

establishes a pleading standard without regard to whether a claim will succeed on the

merits.  'Indeed it may appear on the face of the pleadings that a recovery is very

remote and unlikely but that is not the test.' "  *Swierkiewicz*, 534 U.S. at 515 (quoting

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

A plaintiff's complaint ordinarily does not need to provide detailed factual

allegations, but it must give sufficient factual allegations to "to raise a right to relief

above the speculative level," that is the complaint must give "only enough facts to state

a claim to relief that is plausible on its face."  *Twombly*, 127 S. Ct. at 1965, 1974[7];

---

[6]     The Supreme Court has held that *Conley*'s "no set of facts" language does not constitute a pleading standard.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007).  The Supreme Court did not question *Conley*'s requirement that the pleading give fair notice.

[7]     Courts have noted that the standard in *Twombly* is applicable to motions for judgment on the pleadings.  *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007); *see also Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing to *Twombly* in reviewing a Rule 12(c) motion); *Powell v. Ohio*,  No. 2:07-cv-754, 2008 WL 80227 at *1 (S.D. Ohio Jan. 7, 2008).

AO 72A
(Rev.8/8
2)

*Erikson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) ("Specific facts are not necessary.").

As a result, there is no heightened pleading requirement in § 1983 cases against

municipalities.   *See Leatherman v. Tarrant County Narcotics Intelligence and*

*Coordination Unit*, 507 U.S. 163, 168 (1993); *see also Maniaci v. Georgetown Univ.*,

510 F. Supp. 2d 50, 66 (D.D.C. 2007) (applying *Leatherman* on a Rule 12(c) motion);

*Pisello v. Town of Brookhaven*, 933 F. Supp. 202, 209-10 (E.D.N.Y. 1996).

The Eleventh Circuit imposes, however, a heightened pleading standard in

§ 1983 cases involving individuals who can raise qualified immunity as a defense.

*See Swann v. Southern Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004).

As a result, "a § 1983 plaintiff [must] allege with some specificity the facts which make

out [a § 1983] claim." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d

1359, 1367 (11th Cir. 1998).[8] This means that the complaint must "include the specific,

---

[8]     The Eleventh Circuit has described that heightened pleading standard in civil rights cases as follows:

> The complaint must allege the relevant facts with some specificity. More than mere conclusory notice pleading is required. A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. Moreover, in reviewing a motion to dismiss, we need only accept well-pleaded facts and reasonable inferences drawn from those facts. Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal. We must also keep in mind the fact that we generally accord official conduct a

21

AO 72A
(Rev.8/8
2)

non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995), *abrogated by Goad v. Mitchell*, 297 F.3d 497, 503 (6th Cir. 2002), but *cited with approval by Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003).

### 3.    Analysis

As summarized above, the parties raise the following arguments concerning whether dismissal of Plaintiffs' claims against the individual Defendants is appropriate: (1) a heightened pleading standard should not apply in § 1983 cases against individual Defendants; (2) Defendants are entitled to qualified immunity because (a) the two Williamses failed to allege specific facts to establish comparators, (b) the other Plaintiffs failed to allege specific facts to show similarly situated comparators, (c) Plaintiffs failed to allege specific facts to establish a constitutional violation by the

---

presumption of legitimacy.

*Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (citations and internal punctuation omitted).  Although the undersigned is construing Defendant's motion to dismiss as a motion for judgment on the pleadings, the Court finds that because a motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss," *WESI, LLC*, 509 F. Supp. 2d at 1357, the heightened pleading standard is applicable for motions for judgment on the pleadings.

22

Board Members, and (d) Plaintiffs failed to allege sufficient facts to establish liability against Wilson. The Court addresses each argument in turn.

> ### a. Viability of Heightened Pleading in § 1983 Cases Against Individual Defendants

The Court agrees with Plaintiffs that Supreme Court precedent has suggested that courts may not impose heightened pleading standards beyond the heightened pleading requirements in the Federal Rules of Civil Procedure. For instance, in *Twombly*, the Supreme Court reiterated that the federal courts cannot broaden the scope of FED. R. CIV. P. 9 by judicial fiat because such a broadening "can only be accomplished 'by the process of amending the Federal Rules, and not by judicial interpretation.' " *Twombly*, 127 S. Ct. at 1973 n.14 (quoting *Swierkiewicz*, 534 U.S. at 515, which in turn was quoting *Leatherman*, 507 U.S. at 168). The Supreme Court did recognize that "[o]n certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires." *Id.* In making this statement about abusive litigation, the Supreme Court only cited to FED. R. CIV. P. 9(b), (c), suggesting that a high risk of abusive litigation arises only in circumstances of fraud and mistake, *see* FED. R. CIV. P. 9(b), and in circumstances where a party denies the performance or occurrence of a condition precedent, *see*

23

AO 72A
(Rev.8/8
2)

FED. R. CIV. P. 9(c).  Thus, *dicta* in the *Twombly* decision suggests that heightened

pleading is limited to what is required in Rule 9(b) and (c).

In *Jones*, the Supreme Court noted in the context of pleading that "[i]n a series

of recent cases, we have explained that courts should generally not depart from the

usual practice under the Federal Rules on the basis of perceived policy concerns."

*Jones*, 127 S. Ct. at 919-20 (citing *Leatherman*, 507 U.S. 163, *Swierkiewicz*, 534 U.S.

506, and *Hill v. McDonough*, 126 S. Ct. 2096 (2006)).  The Court then noted that its

*Leatherman*, *Swierkiewicz*, and *Hill* decisions all indicated that specific pleading

requirements are generally achieved through amending the Federal Rules of Civil

Procedure, not by judicial decisions.  *Jones*, 127 S. Ct. at 919-20.  Based in part on

these decisions, the *Jones* Court held that the PLRA did not require a heightened

pleading standard for a prisoner to allege exhaustion.  *Id.* at 921.

The above discussion suggests that a heightened pleading standard may not be

appropriate for § 1983 cases against individual defendants because there is no rule of

civil procedure that requires such a heightened standard.  However, there are two

countervailing factors in favor of applying a heightened pleading standard.  First, the

Supreme Court has stated that in cases involving examination of a public official's state

of mind, a court may insist that the plaintiff " 'put forward specific, nonconclusory

24

AO 72A
(Rev.8/8
2)

factual allegations' that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal" even if the official chooses not to plead the qualified immunity defense. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).[9] This is so because it ensures "that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *Id.* This rationale for having the plaintiff plead specific factual allegations mirrors the reasoning that the Eleventh Circuit used in crafting the heightened pleading, namely to "eliminate nonmeritorious claims on the pleadings and to protect public officials from protracted litigation involving specious claims." *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992)

---

[9]     The *Crawford-El* opinion can be reconciled with the *Leatherman*, *Swierkiewicz*, *Hill*, and *Jones* pronouncements about heightened pleading. The *Crawford-El* Court indicated that Supreme Court "cases demonstrate that questions regarding pleading, discovery, and summary judgment are most frequently and most effectively resolved either by the rulemaking process or the legislative process." *Crawford-El*, 523 U.S. at 595. As a result, the *Crawford-El* Court did not indicate that a plaintiff must initially engage in heightened pleading where qualified immunity was implicated, but instead noted that a court may insist on specific factual allegations after the plaintiff files his complaint by using Rule 7(a)'s reply provision or Rule 12(e)'s provision for a more definite statement. *Id.* at 598. Other circuit courts have explicitly read *Crawford-El* as invalidating the heightened pleading requirements for civil rights plaintiffs in cases in which the defendant raises the affirmative defense of qualified immunity. *See Goad v. Mitchell*, 297 F.3d 497, 502-03 (6th Cir. 2002) (citing cases and holding that *Crawford-El* invalidates the heightened pleading requirement).

25

(quoting *Arnold v. Bd. of Edu. of Escambia County*, 880 F.2d 305, 309 (11th Cir. 1989)), *overruling on other grounds recognized by Swann*, 388 F.3d at 837.

Second and more importantly, the Eleventh Circuit has directly addressed the issue of the heightened pleading standard in § 1983 cases against individual defendants and has explicitly determined that such a heightened standard applies in these § 1983 cases. *See Epps v. Watson*, 492 F.3d 1240, 1242 (11th Cir. 2007) (citing *GJR Invs., Inc.*, 132 F.3d at 1367); *Swann*, 388 F.3d at 838. "A circuit court's decision binds the district courts sitting within its jurisdiction while a decision by the Supreme Court binds all circuit and district courts." *McGinley v. Houston*, 361 F.1328, 1331 (11th Cir. 2004). A district court need not follow a prior circuit court case when the decision is expressly overruled or, in rare cases, when the court of appeals sitting *en banc* or the Supreme Court "implicitly overrule[] a prior precedent, making clear that the reasoning and decision of the court of appeals would have been different under the new precedent." *Nelson v. United States*, Nos. Civ. A. 04-560 - 04-563, 2005 WL 5783768 at * 4 (S.D. Ala. Dec. 13, 2005) (citing 18 Moore's Fed. Pract., § 134.02[2], [6] (3d ed.)).

This Court must follow the Eleventh Circuit's heightened pleading standard in § 1983 cases against individuals. First, as Defendants point out, the Supreme Court opinions are factually different than those involved in this case in that they deal with

26

AO 72A
(Rev.8/8
2)

pleading requirements for different causes of action. *See Jones*, *supra*, (PLRA claim); *Swierkiewicz*, *supra* (Title VII claim); *Leatherman*, *supra* (§ 1983 claim against a municipality).   They therefore do not explicitly overrule the Eleventh Circuit's heightened pleading standard for § 1983 cases against individual defendants.

Second, the Court finds that the reasoning of these Supreme Court cases does not implicitly overrule the Eleventh Circuit's decisions because the Supreme Court has stated that "Rule 8(a)'s simplified pleading standard applies to all civil actions, *with limited exceptions*." *Swierkiewicz*, 534 U.S. at 513 (emphasis added).   Thus, the Supreme Court at least has contemplated exceptions to its general rule of no heightened pleading where the Rules of Civil Procedure or federal statutes do not require heightened pleading.   As a result, this Court cannot definitively say that the Eleventh Circuit's reasoning in applying a heightened pleading standard in § 1983 cases is contrary to Supreme Court precedent.

Third, the Eleventh Circuit has explicitly recognized the Supreme Court's precedents limiting courts from adopting a heightened pleading standard in certain cases, but the Eleventh Circuit has not deemed these Supreme Court opinions as preventing it from applying a heightened pleading standard in § 1983 cases involving individual defendants or in other cases where defendants can raise qualified immunity.

27

AO 72A
(Rev.8/8
2)

*See Epps*, 492 F.3d at 1243 n.2 (distinguishing heightened pleading standard for § 1983 cases against individual defendants from *Leatherman* on the basis that *Leatherman* dealt with § 1983 liability against municipalities); *Swann*, 388 F.3d at 837-38 (identifying Eleventh Circuit cases that *Leatherman* overruled but maintaining that the heightened pleading standard applies in § 1983 cases involving defendants who can raise a qualified immunity defense); *GJR Invest., Inc.*, 132 F.3d at 1368 (declining to extend the *Leatherman* holding to cases involving individual government officials). As a result, the Court finds that until explicit case law reverses the heightened pleading standard, the Eleventh Circuit's heightened pleading standard applies in cases concerning individual Defendants who may assert a qualified immunity defense. *See Schlotter v. Walsh*, No. 6:05-cv-277, 2005 WL 1051183 at * 2 (M.D. Fla. Apr. 28, 2005) (applying heightened pleading standard for § 1983 claims against individual defendants because there was no binding Supreme Court precedent on the issue).[10]

---

[10]    Other circuits disagree.  For instance, the First Circuit has described the *Swierkiewicz* decision as "the death knell for the imposition of a heightened pleading standard except in cases in which either a federal statute or specific Civil Rule requires that result." *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66 (1st Cir. 2004) (joining the Second, Sixth, Seventh, Ninth, and Tenth Circuits in rejecting the heightened pleading standard for civil rights cases).

28

AO 72A
(Rev.8/8
2)

    b.  *Qualified Immunity for the 42 U.S.C.*
       *§ 1983 Claims Against the Individual*
       *Defendants*

Public officials are entitled to qualified immunity when governmental officials, acting within their discretionary authority, engage in conduct that does not violate clearly established statutory or constitutional rights about which a reasonable person would have known. *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007). To be entitled to qualified immunity, the officials must first demonstrate that they acted within the scope of their discretionary authority. *Id.*[11] Next, the plaintiff "must establish that the state of the law when the challenged events occurred was such that the defendant[s] had fair warning that [their] alleged treatment of the plaintiff[s] was unconstitutional." *Id.* This means that the plaintiff must allege facts sufficient to demonstrate that a violation of a constitutional right occurred in light of clearly established precedent. *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (*en banc*).

The individual Defendants contend that they are entitled to qualified immunity from Plaintiffs' § 1983 equal protection claims. Section 1983 states in relevant part

---

[11]  There is no dispute that the individual Defendants were acting within the scope of their authority in this case.

29

that "[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must show: (1) an individual deprived the plaintiff of a federal right; and (2) the person who deprived the right acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).[12] A plaintiff may bring a § 1983 claim on the basis that his rights under the Equal Protection clause of the Fourteenth Amendment were violated. *See Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998).

The Equal Protection clause "ensures a right to be free from intentional discrimination based upon race." *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1268 (11th Cir. 2003). As a result, there is "an equal protection right

---

[12]    When a plaintiff brings § 1983 claims against an individual defendant, the defendant is liable under § 1983 in his individual capacity only if he is a decisionmaker. *See Quinn v. Monroe County*, 330 F.3d 1320, 1326 (11th Cir. 2003) (noting that a decisionmaker has the power to make official decisions and thus be held individually liable); *see also Redding v. Tuggle*, No. 1:05-cv-2899-LTW, 2007 WL 2462641 at * 28 (N.D. Ga. July 11, 2007) (R&R) ("The power to recommend, however, does not impose individual liability under § 1983, even if the recommendation is merely given a 'rubber stamp.' "); *Sanders v. City of Selma*, No. Civ.A. 04-753, 2005 WL 3411342 at * 4 (S.D. Ala. Dec. 13, 2005) (noting that because the mayor was not the decisionmaker, he could not be held individually liable). Defendants do not contend that some of the individual Defendants are not decisionmakers, so the Court does not address the issue.

30

to be free from employment discrimination." *Id.*  This equal protection right is clearly established.  *Lawson v. Curry*, 244 Fed. Appx. 986, 988 (11th Cir. Aug. 10, 2007) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991)). A party establishes a violation of the Equal Protection clause by showing that: (1) the plaintiff was treated differently from similarly situated persons in all relevant respects; and (2) the different treatment was a result of discriminatory intent or purpose. *See GJR Invest., Inc.*, 132 F.3d at 1367; *see also Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001); *Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1507 (11th Cir. 1995).

Defendants contend that they are protected by qualified immunity from Plaintiffs' § 1983 equal protection claims because Plaintiffs have not alleged sufficiently specific facts to state equal protection violations against the individual Defendants.  [*See* Doc. 45 at 9-15; Doc. 56 at 4-13].  First, they criticize Plaintiffs' complaint for not naming specific comparators for Cynthia and Michelle Williams. [*Id.* at 12].  Second, they contend that Plaintiffs Burnett, Parker, Hedgebeth, Hertwig, and McGuire have not stated equal protection claims because they have identified individuals with different job titles or without job titles.  [*Id.* at 12-13].  Third, Defendants contend that Plaintiffs failed to mention specific individual Defendants in

31

Count 1. [*Id.* at 13]. Fourth, Defendants argue that Plaintiffs failed to contend that all the individual Board Members acted with discriminatory intent. [*Id.*]. Fifth, Defendants assert that Plaintiffs have not stated a claim against Wilson because they failed to allege that he personally acted with discriminatory animus and there are no allegations creating a causal connection between him and the constitutional violation. [*Id.* at 14]. The Court addresses each of Defendants' arguments below.

### i. *Williamses' Comparators*

Relying on *Boyd v. Peet*, No. 1:06-cv-2478-RLV, 2007 WL 646990 at * 3 (N.D. Ga. Feb. 26, 2007), Defendants assert that Plaintiffs cannot state any claims against the individual Defendants because they have not identified similarly situated comparators. [Doc. 45 at 12].

The Court initially finds that Defendants' reading of *Peet* places too much of an emphasis on plaintiffs actually naming individual comparators. In *Peet*, the District Court found no violation of the Equal Protection Clause because "[n]owhere in . . . the complaint does the plaintiff even name similarly situated individuals much less make any allegation that the defendants have treated him differently than others who are similarly situated." *Peet*, 2007 WL 646990 at * 3. Thus, the *Peet* Court suggested that the plaintiff could state a § 1983 claim alleging an equal protection violation by:

32

AO 72A
(Rev.8/8
2)

(1) naming similarly situated individuals; or (2) alleging that the defendants treated the plaintiff differently than others who were similarly situated.  Here, it is undisputed that the Williamses did not specifically name any individual comparators.  However, *Peet* also allows for an individual to identify comparators by alleging not only specific names of comparators, but also by alleging that the plaintiff was treated differently from those who were similarly situated.  *Id.*  The allegations of both Williamses fall into this second showing.

Cynthia Williams alleged that Defendants retained a caucasian coordinator and a caucasian teacher facilitator with less seniority while terminating her.  [Doc. 31 ¶ 84]. Given that Cynthia Williams was a coordinator in the personnel department, [*id.* ¶ 83], her allegation about Defendants retaining a white, less senior coordinator while firing her, is an allegation that a similarly situated individual was treated more favorably. Under the language of *Peet*, Plaintiff has "ma[d]e an[ ] allegation that the defendants have treated [her] differently than others who are similarly situated."  *Peet*, 2007 WL 646990 at * 3.  As a result, *Peet* does not automatically foreclose Cynthia Williams's § 1983 claim.

The Court reaches the same conclusion as to Michelle Williams's § 1983 claim. Williams alleged that Defendants terminated her while "retain[ing] another non-African

33

American employee, similarly situated to [her]." [Doc. 31 ¶ 86]. This allegation appears sufficient under *Peet* because Michelle Williams "ma[d]e an[ ] allegation that the defendants have treated [her] differently than others who are similarly situated." *Peet*, 2007 WL 646990 at * 3.

Although both Williamses' claims appear to sufficiently allege similarly situated individuals under *Peet*, the question remains whether the District Court in *Peet* articulated a sufficient standard under the heightened pleading for § 1983 cases against individual Defendants. The Court concludes that the District Court's standard in *Peet* is proper,[13] but it does not sufficiently explain what needs to be alleged under the heightened pleading standard to show that a comparator is similarly situated. The

---

[13]    Indeed, the Eleventh Circuit's unpublished opinion that affirmed the District Court's decision in *Peet* articulated a similar standard. The Eleventh Circuit determined that Plaintiff's complaint was properly dismissed because he "[did] not allege any similarly situated person or group with whom [the court] can compare him in determining whether he was treated disparately." *Boyd v. Peet*, 249 Fed. Appx. 155, 158 (11ᵗʰ Cir. 2007). Thus, to state an equal protection claim, an individual must allege: (1) a similarly situated person, or (2) a similarly situated group. Although differently stated than the District Court, the Eleventh Circuit's standard is essentially the same in that both courts require allegations that a defendant treat a plaintiff differently than a similarly situated individual. The problem with the Eleventh Circuit's statement of the standard is that it too does not delve into what must be alleged to demonstrate that an individual is similarly situated.

34

following discussion explains what allegations are sufficient to state that a comparator is similarly situated.

The Eleventh Circuit in *GJR Investments, Inc.*, has stated that "[b]are allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these 'other' applicants were situated similarly to the plaintiff." *GJR Invest., Inc.*, 132 F.3d at 1367-68. The Eleventh Circuit has indicated that in the heightened pleading context, this similarly situated standard is rigorous. *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1204 (11th Cir. 2007). In the employment context, there must be allegations to show that employees of different races are treated differently despite being " 'similarly situated *in all relevant respects*.' " *See id.* (quoting *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316-19 (11th Cir. 2003)) (emphasis added in *Griffin*).[14]  For

---

[14]     The Court is somewhat perplexed by the *Griffin* Court's reliance on *Knight*. *Griffin* was before the Eleventh Circuit on an interlocutory appeal of a denial of a motion to dismiss. *Griffin*, 496 F.3d at 1193-94. Thus, the *Griffin* Court was explaining the standards applicable to motions to dismiss, which in turn would be applicable to a motion for judgment on the pleadings. Yet, *Knight* was a case decided on motion for summary judgment. *Knight*, 330 F.3d at 1315-16. Thus, in explaining the allegations necessary for stating that another employee was similarly situated at the motion to dismiss stage for employment cases, the Eleventh Circuit relied on a case decided at summary judgment where specific evidence was presumably uncovered during discovery.

35

AO 72A
(Rev.8/8
2)

instance, it may not be sufficient to state that two nurses perform similar roles and have similar problems with co-workers because similar employees may perform similar functions in different ways such as having different levels of tardiness or different proficiencies in job performance. *See Griffin*, 496 F.3d at 1204. Thus, the factual allegations must be specific to show that a comparator is similarly situated in all relevant respects to state a § 1983 claim against individual defendants.

The Court finds that under the similarly situated in all relevant respects standard articulated in *Griffin*, the Williamses have failed to provide sufficient allegations under the heightened pleading standard. First, the Court finds that the allegations by Cynthia Williams are insufficient to identify a similarly situated employee. She has only

---

Although the citation to a case decided on summary judgment to explain the pleading standard is a little confusing, the Court interprets this citation to mean that *Griffin* requires very specific factual allegations to meet the pleading standard when stating an equal protection claim. Although *Griffin*'s discussion concerning the pleading requirements in the employment context for equal protection claims is *dicta*, it is the best explanation of what allegations are necessary to state a claim under the heightened pleading standard in § 1983 cases that the undersigned has found. In citing to *Knight*, the *Griffin* Court appeared to emphasize the detailed pleading necessary to meet the heightened pleading standard. *See Griffin*, 496 F.3d at 1204-05. The Court concludes that given the lack of guidance in pleading from the Eleventh Circuit in other § 1983 employment discrimination cases, which may explain the Eleventh Circuit's reliance on a case decided at summary judgment, it is compelled to follow *Griffin*'s guidance that very specific allegations at the pleadings stage are necessary to show that a comparator is similarly situated in the employment context.

36

alleged that Defendants "retained a Caucasian coordinator and a Caucasian teacher facilitator with less seniority." [Doc. 31 ¶ 84]. These allegations do not show that the comparators are similarly situated in all relevant respects given the level of specificity that is apparently required by *Griffin*. *Cf. Lawson*, 244 Fed. Appx. at 989 (explaining allegations that met the heightened pleading standard and allegations that did not meet the heightened standard); *Hayden v. Coppage*, Civ. Action No. 2:06cv948, 2008 WL 313851, at * 7-8 (M.D. Ala. Feb. 4, 2008) (explaining in the context of a "class of one"[15] equal protection case why allegations are too vague to survive a motion to dismiss).

Second, the Court also finds that Michelle Williams's allegation that Defendants "decided to retain another non-African American employee, similarly situated" is insufficient under the heightened pleading standard. [Doc. 31 ¶ 86]. Again, this allegation simply does not state with sufficient specificity that a comparator was similarly situated in all relevant respects. *See Hayden*, 2008 WL 313851, at * 8 (noting that use of the phrase "similarly situated" is an averment that is "nothing more than [a]

---

[15]    The *Griffin* case also involved a "class of one" case, but in explaining the similarly situated element of an Equal Protection claim, the Eleventh Circuit equated the "class of one" similarly situated standard with the similarly situated standard in § 1983 employment discrimination cases. *Griffin Indus.*, 496 F.3d at 1200, 1204-05.

37

boilerplate allegation[ ]"); *McKinney v. Orange County, Fla.*, No. 6:06-cv-1240, 2007 WL 2119388, at * 6 (M.D. Fla. July 20, 2007) (finding that allegation that defendants "have taken similar actions against other African-American employees, whereas Defendants have not taken those actions against Caucasian employees" was insufficient to state an equal protection claim).

As a result, the Court concludes that under the heightened pleading standard, Plaintiffs Cynthia and Michelle Williams have failed to state equal protection claims against any of the individual Defendants. The individual Defendants who are implicated in the Williamses' terminations are therefore entitled to qualified immunity.

Accordingly, the Court **RECOMMENDS** that Defendants' construed motion for judgment on the pleadings be **GRANTED** in favor of Wade, Rooks, the Board Members, and Wilson insofar as the § 1983 equal protection claims of Plaintiffs Cynthia Williams and Michelle Williams are concerned.

*ii. Burnett, Parker, Hedgebeth, Hertwig, and McGuire Comparators*

Defendants argue that Burnett, Parker, Hedgebeth, Hertwig, and McGuire have not alleged sufficient facts because their alleged comparators held different job titles. [Doc. 45 at 8, 12-13]. "Different treatment of dissimilarly situated persons does not violate the Equal Protection Clause." *See Campbell v. Rainbow City, Ala.*, 434 F.3d

38

AO 72A
(Rev.8/8
2)

1306, 1314 (11ᵗʰ Cir. 2006) (quoting *E&T Realty v. Strickland*, 830 F.2d 1107, 1109 (11ᵗʰ Cir. 1987)). As discussed above, a plaintiff sufficiently alleges an equal protection claim by "attempt[ing] to show in some fashion that these 'other' applicants were situated similarly to the plaintiff." *GJR Invest., Inc.*, 132 F.3d at 1368. This means that in the employment context, there must be allegations to show that employees are different races, treated differently, and " 'similarly situated *in all relevant respects*.' " *See Griffin Industries, Inc.*, 496 F.3d at 1204 (quoting *Knight*, 330 F.3d at 1316-19) (emphasis added in *Griffin*). As explained above, the factual allegations to make this showing must be quite specific. *See id.*

The Court concludes that neither Burnett, Parker, Hedgebeth, Hertwig, nor McGuire have alleged sufficient facts to establish that their proposed comparators are similarly situated in all relevant respects because they lack the specificity that is apparently required to make this showing. First, Burnett merely alleges that her caucasian counterpart, Jones, in the northern teacher center was retained, [Doc. 31 ¶¶ 48, 50], and that Callum, a caucasian professional assistant, was reinstated while Plaintiff was not, [*id.* ¶ 51]. Plaintiffs allegations do not show that Callum was similarly situated in all relevant respects. The only allegations about Callum reveal that she was a professional assistant. More is needed under the heightened pleading

39

standard.  As for Jones, the allegations are also insufficient based on what appears to be required in *Griffin*.  Burnett has not provided allegations about Jones's performance vis-a-vis her own performance, or any other information to show that they are similar in all relevant respects.  Without this specificity, the Court concludes that Burnett has not alleged sufficient facts to state a § 1983 equal protection claim under the heightened pleading standard.

Second, Hedgebeth only states that "another Technology III Specialist, Jason Brown, a Caucasian male with less seniority than Plaintiff, did not lose his job to this [RIF]" while Hedgebeth lost her job. [Doc. 31 ¶ 53].  The heightened pleading standard requires more information about Brown before the Court can determine that he is similarly situated in all relevant respects to Plaintiff.  *Cf. Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1315 (M.D. Ala. 2000) (finding that although plaintiff's allegations were sufficient under Rule 8, plaintiff's allegations were insufficient under the heightened pleading standard in sexual harassment case because  the allegations were too conclusory); *Scott v. Estes*, 60 F. Supp. 2d 1260, 1271-72 (M.D. Ala. 1999) (explaining why plaintiff stated § 1983 sexual harassment claim based on the equal protection clause under heightened pleading standard); *Shows v. Morgan*, 40 F. Supp. 2d 1345, 1352-53, 1358-59 (M.D. Ala. 1999) (describing factual

40

AO 72A
(Rev.8/8
2)

allegations about plaintiff and comparator and then finding that plaintiff stated equal protection claim based on racially discriminatory failure to promote).  As a result, Hedgebeth has failed to alleged sufficient facts to establish an Equal Protection claim.

Third, the Court concludes that Hertwig has failed to sufficiently allege that her alleged comparator - - Kathleen Yarbrough - - is similarly situated in all relevant respects.  Hertwig alleged that "Kathleen Yarbrough, a Caucasian female who served as professional learning teacher facilitator for [FCSD], did not lose her job to the RIF despite having substantially less seniority and experience than Plaintiff."  [Doc. 31 ¶ 65].  These allegations are flawed not only because they lack the requisite specificity, but also because they fail to sufficiently differentiate Hertwig and Yarbrough.  Both women are caucasian.  [*Id.* ¶¶ 54, 65].  Thus, there is no allegation that someone outside of the protected class was treated more favorably.  For instance, Hertwig did not allege that Yarbrough was not perceived as associating with African-American employees and as a result, received this better treatment.  Hertwig, therefore, has not stated an Equal Protection claim.

Fourth, the Court concludes that the allegations concerning McGuire are insufficient to establish that someone similarly situated in all relevant respects was treated differently.  McGuire states that "Yarbrough, a Caucasian female who served

41

as professional learning teacher facilitator for [FCSD], did not lose her job to the RIF despite having substantially less seniority and experience than Plaintiff McGuire." [Doc. 31 ¶ 80]. Again, the Court finds that the factual allegations are insufficient under the heightened pleading standard. Also, the Court agrees with Defendants that McGuire cannot demonstrate that she is similarly situated in all relevant respects because she held the position of Coordinator of FCSD's Department of Professional Learning, [*id.* ¶ 66], while Yarbrough was a teacher facilitator, [*id.* ¶ 80]. That these positions are different fails to demonstrate that Yarbrough is similarly situated in all relevant respects to McGuire. As a result, McGuire has not stated an equal protection claim.

Finally, the Court concludes that Parker has not demonstrated sufficient allegations under the heightened pleading standard to show that her proposed comparator was similarly situated in all relevant respects. Parker alleged that Defendants "retained Frances Callum, a similarly situated Caucasian employee," while terminating Parker. [Doc. 31 ¶ 82]. This allegation is problematic because the use of "similarly situated" does not meet the specificity requirement. *Hayden*, 2008 WL 313851, at * 8. Also, Plaintiff has not described how her job equates to Callum's job and has not otherwise alleged how Callum is otherwise similarly situated

42

in all relevant respects.  As a result, the Court concludes that Parker has failed to state an equal protection violation.

Plaintiffs contend that "at this stage in the lawsuit without the benefit of discovery," they are not "required to identify specific comparators by name." [Doc. 53 at 15].  As discussed above, Plaintiffs may not be required to state the name of the individuals, but they must allege facts under the heightened pleading standard that their proposed comparators are similarly situated in all relevant respects.  Plaintiffs' amended complaint lack such specificity.  Also, to the extent that Plaintiffs rely on *Roy ex rel. Roy v. Fulton County School District*, 509 F. Supp. 2d 1316 (N.D. Ga. 2007), as showing that they have alleged sufficient facts, the Court disagrees.  An examination of the "Background" section of the *Roy* Order demonstrates that the plaintiff in *Roy* made much more detailed factual allegations that any of the Plaintiffs in the instant case. *Id.* at 1318-19.  Finally, the Court agrees with Plaintiffs' general proposition that "different job titles alone, do not show that a comparator is not similarly situated," [*see* Doc. 53 at 15-16], because the Eleventh Circuit has rejected an argument that individuals are automatically prevented from being similarly situated based on job titles. *See Lathem v. Dep't of Children and Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999).  However, this proposition does not mean that Plaintiffs can state a claim simply

43

because they have proffered a comparator. Plaintiffs still must show that the comparators are similarly situated in all relevant respects regardless of their job titles. *See Griffin, supra.*

As a result, the Court concludes that Burnett, Parker, Hedgebeth, Hertwig, and McGuire cannot state equal protection claims against any of the individual Defendants. The Court therefore finds that the individual Defendants who are alleged to have violated these four Plaintiffs' constitutional rights are entitled to qualified immunity.

Accordingly, the Court **RECOMMENDS** that Defendants' construed judgment on the pleadings be **GRANTED** in the favor of Lovett, White, Wade, Rooks, the Board Members, and Wilson in so far as the § 1983 equal protection claims of Burnett, Parker, Hedgebeth, Hertwig, and McGuire are concerned.

Since none of the Plaintiffs have state equal protection claims, all of the individual Defendants are entitled to qualified immunity. In case the District Court disagrees with this conclusion, the Court next addresses Defendants' remaining arguments on the issue of § 1983 liability against the individual Defendants, namely that: (1) Count 1 did not name the individual Defendants; and (2) Plaintiffs' amended complaint fails to meet the heightened pleading standard in raising claims against the individual Board Members and Superintendent Wilson.

44

### iii.  Specificity of Count 1 in Naming the Individual Defendants

Defendants argue that Plaintiffs did not specifically identify the individual Defendants in Count 1.  [Doc. 45 at 13].  The Court disagrees.  As Plaintiffs state in their response brief, [*see* Doc. 53 at 16], they have identified which individual Defendants violated each Plaintiff's constitutional rights in the RIF decision, [*see* Doc. 31 ¶¶ 89-95].  As a result, the Court concludes that Defendants cannot complain about Plaintiffs not naming individual Defendants in Count 1.

### iv.  The Individual Board Members

Defendants argue that Plaintiffs failed to contend that all the individual Board Members acted with discriminatory intent.  [Doc. 45 at 13].  Also, they contend that Plaintiffs never demonstrated that the Board Members were aware of Plaintiffs' race, only that they authorized the RIF.  [Doc. 56 at 10].  Defendants further assert that Plaintiffs cannot establish liability for all Board Members based on discriminatory animus of only one member.  [*Id.*].  Finally, Defendants distinguish the cases upon which Plaintiffs rely.  [*Id.* at 10-11].

The Court concludes that Plaintiffs have not sufficiently pleaded allegations to establish liability for each Board Member.  Plaintiffs alleged that the Board Members: (1) have an unofficial policy or custom of hiring and firing employees based on race;

45

AO 72A
(Rev.8/8
2)

(2) more than one Board Member expressed concern about the need for more caucasians in the central office; (3) other Board Members did not object to this custom or policy; (4) the Board Members used the policy in implementing the RIF; and (5) the Board Members authorized and approved the RIF.  [Doc. 31 ¶ 33].  First, the Court notes that another District Court has found similar allegations to be insufficient under the heightened pleading standard to state a § 1983 claim.  *See McKinney v. Orange County, Fla.*, No. 6:06-cv-1240, 2007 WL 2119388, at * 6 (M.D. Fla. July 20, 2007) (finding that the following allegations against the defendants were insufficient to state a claim under the heightened pleading standard: defendants "have taken similar actions against other African-American employees, whereas Defendants have not taken those actions against Caucasian employees"; defendants "are known to make statements with racial undertones"; defendants "were aware of and condoned, encouraged, participated in, and ratified the disparate treatment of African-American employees"; and the county defendant "maintains a policy, custom, or practice of treating African-American employees differently from Caucasian employees who are in similar or same positions").

Second, the Court agrees with Defendants that Plaintiffs' failure to demonstrate that the individual Defendants were aware of the Plaintiffs' race or the race of

46

individuals with whom Hedgebeth associated fails to show that the individuals acted with discriminatory animus with regard to Plaintiffs' terminations. "To plead specific enough information for the court to conclude that the defendants have violated the equal protection clause of the fourteenth amendment, [Plaintiffs] must allege specific acts and an intent to discriminate on the part of all the defendants." *Smith v. State of Ala.*, 996 F. Supp. 1203, 1212 (M.D. Ala. 1998). Without allegations of this knowledge, the allegations are insufficient under the heightened pleading standard because there are no specific allegations to infer discriminatory intent. *See id.*

Third, these allegations are too general. Plaintiffs must plead "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Veney*, 70 F.3d at 922, *cited with approval by Gonzalez,* 325 F.3d at 1235. There are five Board Members, but Plaintiffs have not provided allegations of specific acts and an intent to discriminate by each Board Member. In other words, Plaintiffs' allegations do not describe the actions of each Board Member individually. By making allegations collectively against the Board Members, the Court cannot determine if each individual Board Member is entitled to qualified immunity because there are no specific allegations against each member of the board. *Cf. McMillan v. DeKalb County, Ga.*,

47

No. 1:04-cv-3039, 2005 WL 5121856 at * 8 (N.D. Ga. Feb. 15, 2005) (dismissing amended complaint where it lacked specific factual allegations regarding actual conduct undertaken by four defendants); *Smith*, 996 F. Supp. at 1213 (finding that plaintiff's general allegations did not state an equal protection claim under the heightened pleading standard because plaintiff did not "come forward with specific facts, concerning each defendant, indicating that each defendant has violated his fourteenth amendment rights").

As for Plaintiffs' argument that *Kyle K. v. Chapman*, 208 F.3d 940 (11th Cir. 2000), allows Plaintiffs to allege an equal protection claim collectively against the Board Members, [*see* Doc. 53 at 17-18], the Court disagrees. The Court recognizes that *Kyle K.* states that "[t]he fact that defendants are accused collectively does not render the complaint deficient." *Id.* at 944. *Kyle K.* is distinguishable, however. *Kyle K.* dealt with a § 1983 claim premised on a violation of a plaintiff's substantive due process right to a safe environment in a mental hospital, *id.* at 943, while the instant case deals with a § 1983 claim based on the equal protection clause. To state a substantive due process claim, the plaintiff only needed to allege that plaintiff suffered physical or mental abuse. *Id.* The constitutional violation in *Kyle K.* did not have a discriminatory intent requirement as in the instant case. Without a discriminatory intent element, the

48

collective allegations in *Kyle K.* were permissible. Here, discriminatory intent must be pleaded to state a claim against each individual Defendant. Collective allegations of discriminatory intent are insufficient under the heightened pleading standard. Otherwise, the Court would be assuming that the collective discriminatory actions of the Board were the same as discriminatory actions of its individual members. The Court cannot make such assumptions because the heightened pleading standard was developed to "eliminate nonmeritorious claims on the pleadings and to protect public officials from protracted litigation involving specious claims." *Oladeinde*, 963 F.2d at 1485 (quoting *Arnold*, 880 F.2d at 309 ). To assume that an individual is liable for the discriminatory actions of the entire group defeats the purpose of the heightened standard. As a result, the Court finds that collective allegations of discriminatory intent will not establish that an individual acted with discriminatory intent under the heightened pleading standard.[16]

---

[16]    The Court finds that the same reasoning applies to Plaintiffs' citation to *Ray v. Foltz*, 370 F.3d 1079, 1083 n.2 (11th Cir. 2004), because *Ray* involved a foster child's right to be free from unnecessary pain and the right to be physically safe. *Id.* at 1082.

49

AO 72A
(Rev.8/8
2)

Therefore, the Court concludes that Plaintiffs have failed to state § 1983 equal protection claims against each individual Board Member. The individual Board Members are therefore entitled to qualified immunity.

Accordingly, the undersigned **RECOMMENDS** that Defendants' construed motion for judgment on the pleadings be **GRANTED** in favor of Bernath, Bryant, Schultz, Reeves, and Dean, *i.e.*, the Board Members.

### *v. Superintendent Wilson*

Defendants argue that Plaintiffs' allegations concerning Wilson are merely conclusory such that there is no basis to hold him liable. [Doc. 45 at 14; Doc. 56 at 7-9].

" 'It is axiomatic, in section 1983 actions, that liability must be based on something more than respondeat superior.' " *Smith*, 996 F. Supp. at 1212 (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)); *see also Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 801 (11th Cir. 1998). However, "supervisors can be held liable for subordinates' constitutional violations on the basis of supervisor liability under" § 1983. *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007). A supervisor is liable under § 1983 when: (1) "the supervisor personally participates in the alleged constitutional violation"; or (2) "when there is a

50

AO 72A
(Rev.8/8
2)

causal connection between" the supervisor's actions and the alleged constitutional deprivation. *Id.*; *Smith*, 996 F. Supp. at 1212. A plaintiff may establish a causal connection when:

> 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Mathews*, 480 F.3d at 1270 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)); *see also Braddy*, 133 F.3d at 802 (quoting *Brown*, 906 F.2d at 671).

The Court concludes that Plaintiffs have not alleged sufficient facts to demonstrate that Wilson is liable under § 1983. Plaintiffs make the following allegations against Wilson: (1) Wilson signed off on the list of terminated employees after receiving it from the FCBE, even though 96 percent of those terminated were African-American, [Doc. 31 ¶ 87]; and (2) Rooks and Wade reported to Wilson, [*id.* ¶ 26-27]. These allegations are insufficient under the heightened pleading standard. First, they do not show that Wilson directly participated in the constitutional violation because there are no allegations that he held discriminatory attitudes.

51

Second, Plaintiffs have not established a causal connection between Wilson signing off on the list and the alleged racially discriminatory decision to terminate Plaintiffs.  There are no allegations of a history of widespread practice of terminating employees based on race.  The allegations about the disparate funding and the 2003 unitary agreement do not show that there was a practice of terminating employees based on race.  Plaintiffs have not shown that it was Wilson's custom or policy to terminate minority employees.  Instead, the allegations indicate that an unofficial policy and custom of discrimination is attributable to the Board Members, not Superintendent Wilson.  [*See id.* ¶ 33].  Further, the allegations concerning Wilson do not demonstrate that he has directed subordinates to act in a discriminatory manner.  The Court recognizes that each Plaintiff essentially alleges that some subordinate "under the direction and approval of . . . Wilson" discriminated against each Plaintiff. [*See* Doc. 31 ¶¶ 89-95].  These allegations are too conclusory and do not show that Wilson actually directed each subordinate to discriminate against each Plaintiff. *See Cobb v. Marshall*, No. 2:06cv675, 2007 U.S. Dist. LEXIS 55022 at * 11 (M.D. Ala. July 27, 2007) (finding no supervisor liability where plaintiff used boilerplate and nonspecific language such as "authorized," "ratified," and "condoned"); *Smith*,

52

AO 72A
(Rev.8/8
2)

996 F. Supp. at 1213 (finding allegations insufficient to establish supervisor liability under § 1983 where plaintiff only alleged general facts).

Without a showing of a causal connection, the Court finds that Plaintiffs have not established § 1983 claims against Wilson. *See LaFlower v. Reid*, No. 2:04-cv-496, 2007 WL 2225816, at * 3 (M.D. Fla., July 31, 2007) (finding plaintiff failed to state a claim against a supervisor because the amended complaint "is devoid of any facts supporting a causal connection").

Plaintiffs argue that even if there is no showing of discriminatory intent by Wilson, he should be held liable under the cat's paw theory because he rubber stamped the recommendations of those who discriminated. [Doc. 53 at 8 n.7]. The Court disagrees. A plaintiff establishes causation under the cat's paw theory by showing that a recommendation by someone with animus directly resulted in the employee experiencing an adverse action. *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331-32 (11th Cir. 1999). The Eleventh Circuit has declined to extend the rubber stamp inquiry to cases involving individual liability. *See Kamensky v. Dean*, 148 Fed. Appx. 878, 880 (11th Cir. 2005). Thus, the cat's paw theory cannot be used to hold Wilson individually liable for the discriminatory animus of his subordinates since the theory does not apply to cases involving individual liability. Instead, Plaintiffs must allege

53

AO 72A
(Rev.8/8
2)

facts to show supervisory liability, which as explained above, Plaintiffs have failed to do. *See Lupo v. Voinovich*, 235 F. Supp. 2d 782, 797 (S.D. Ohio 2002) (concluding that individual supervisor's rubber stamping of a decision by subordinates did not subject the supervisor to liability under § 1983 because "[i]f such 'participation' were sufficient to warrant individual § 1983 liability on the part of supervisors, then little could be done within a state government that would not expose those in positions of authority to potentially crippling liability . . . in their personal capacities").

As a result of the foregoing discussion, the Court concludes that Plaintiffs have not alleged sufficiently specific facts to state equal protection claims under § 1983 against Wilson. Therefore, Wilson is entitled to qualified immunity.

Accordingly, the Court **RECOMMENDS** that Defendants' construed motion for judgment on the pleadings be **GRANTED** in Wilson's favor as to all § 1983 equal protection claims against him.

### *vi. Remedy for Violation of Pleading Standard*

In their response brief, Plaintiffs request that if their amended complaint is insufficient, they be given leave to conduct limited discovery to determine additional, specific facts to support their claims and leave to amend their complaint following limited discovery. [Doc. 53 at 2 & nn. 2-3]. Defendants respond that Plaintiffs' request

54

for limited discovery is without merit because Plaintiffs never examined documents that were made available to them pursuant to their open records request.  [Doc. 56 at 2 n.1].

The Court first concludes that initial discovery before filing an amended complaint is inappropriate.  The Supreme Court has noted that qualified immunity was developed in part to address the evil of involving public officials from the costs of "broad-reaching" discovery, but it has also stated that the doctrine does not preclude all discovery in cases involving public officials.  *See Crawford-El*, 523 U.S. at 593 n.14.  The Supreme Court has indicated, however, that a trial court has the following two options before it should allow any discovery: (1) require a plaintiff to " 'put forward specific, nonconclusory factual allegations' " by ordering a reply under FED. R. CIV. P. 7(a) or granting a motion for a more definite statement under FED. R. CIV. P. 12(e); or (2) resolve the qualified immunity issue where the defendant pleads qualified immunity as a defense.  Thus, it appears that Plaintiffs are not entitled to any discovery at this prediscovery motion stage until the qualified immunity issue is resolved at this stage.

Furthermore, even if discovery were appropriate, Plaintiffs have not made an adequate showing to entitle them to such discovery.  Here, Plaintiffs have "not specif[ied] what methods of discovery are needed, explain[ed] why [they] did not ask

55

AO 72A
(Rev.8/8
2)

for discovery prior to [their] deadline for amending the complaint or otherwise demonstrate why [they have] been unable to obtain the information sought." *See Hayden*, 2008 WL 313851 at * 9.  As a result, discovery before repleading is inappropriate.

The Court next concludes that permitting Plaintiffs to file another amended complaint is inappropriate.  Courts have both dismissed complaints for failing to meet the heightened pleading standard[17] and called plaintiff's " 'counsel to task' and direct[ed] counsel to remedy the deficient § 1983 count" by granting leave to amend the complaint.[18]  Once a defendant has filed an answer, a party may be permitted to amend his complaint if the opposing party consents of by leave of the court "when justice so requires."  FED. R. CIV. P. 15(a) (2006).  The Eleventh Circuit has stated that there must be substantial reason to deny leave to amend.  *Florida Evergreen Foliage v. E.I. DuPont De Nemours and Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006) (citing

---

[17]     *See, e.g.*, *Hayden*, 2008 WL 313851, at * 8-9, 12.

[18]     *Cobb v. Marshall*, 481 F. Supp. 2d 1248, 1259-60 (M.D. Ala. 2007) (quoting *Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir. 1996)); *Bailey v. Town of Lady Lake, Fla.*, No. 5:05-cv-464, 2006 WL 2048250 at * 5 (M.D. Fla. July 20, 2006) (dismissing § 1983 claims against individual defendants without prejudice); *Smith*, 996 F. Supp. at 1213;  *Malone v. Chambers County Bd. of Comm'rs*, 875 F. Supp. 773, 791 (M.D. Ala. 1994).

56

*Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989)).  A substantial reason may exist for numerous reasons, including "undue delay, undue prejudice to the defendants, and futility of the amendment."  *Id.* (citing *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000)).

The Court concludes that permitting a second amendment would be futile.  The District Court in dismissing Plaintiffs' initial complaint without prejudice already identified the deficiencies in the initial complaint, including Plaintiffs' failure to meet the heightened pleading standard for their § 1983 claims against individual Defendants.  [*See* Doc. 28 at 32-33, 42-43; Doc. 30].  Plaintiffs were therefore on notice that they needed to correct their initial complaint (and proposed amended complaint) to conform with the heightened pleading standard.  That their revisions were insufficient indicates that Plaintiffs cannot state claims against the individual Defendants.  Also, that they now indicate that they need discovery before they can amend their complaint, which appears to be foreclosed by *Crawford-El*, also indicates that any amendment would be futile.  As a result, the Court finds that Plaintiffs should not be given another opportunity to raise amend their complaint because any amendment would be futile.  The construed motion for judgment on the pleadings should therefore be granted with prejudice as to the § 1983 claims against the individual Defendants.

57

AO 72A
(Rev.8/8
2)

Accordingly, the Court **RECOMMENDS** that Defendants' motion for judgment on the pleadings be **GRANTED WITH PREJUDICE** as to the § 1983 equal protection claims against the individual Defendants.

### B.    Punitive Damages

Defendants argue that Plaintiffs' punitive damages claims must be dismissed because Plaintiffs have not stated claims against the individual Defendants and therefore cannot raise § 1983 punitive damages claims. [Doc. 45 at 15-16]. Plaintiffs argue that because the individual Defendants should not be dismissed, their punitive damages claims should remain. [Doc. 53 at 18-20]. Defendants reiterate that if Plaintiffs' claims against the individual Defendants fail as a matter of law, then Plaintiffs are not entitled to punitive damages. [Doc. 56 at 13]. Defendants further appear to argue that even if Plaintiffs have alleged constitutional violations, they have not alleged sufficient facts to entitle them to punitive damages because there are no allegations that the individual Defendants acted with a racially evil motive. [*Id.* at 14].

Municipalities are immune from punitive damages in actions brought under § 1983. *See Gonzalez v. Lee County Housing Auth.*, 161 F.3d 1290, 1299 n.30 (11th Cir. 1998) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)). Individual defendants sued under § 1983 are, however, subject to punitive damages.

58

*See Smith v. Wade*, 461 U.S. 30, 51 (1983).  To obtain punitive damages against an individual defendant, a plaintiff must show that the "defendant was motivated by an evil motive or intent," or there was a "reckless and callous indifference to [the plaintiff's] federally protected rights."   *Bailey v. Town of Lady Lake, Fla.*, No. 5:05-cv-464, 2007 WL 677995 at * 3 (M.D. Fla. Mar. 5, 2007) (quoting *Anderson v. City of Atlanta*, 778 F.2d 678, 688 (11th Cir. 1985)).

The Court concludes that Plaintiffs cannot recover punitive damages in this case. As stated above, Plaintiffs have failed to state equal protection claims against the individual Defendants, thereby entitling the individual Defendants to qualified immunity.  Without any individual Defendants left in the case, Plaintiffs cannot raise punitive damage claims against the FCSD under § 1983[19] or Title VII.[20]

---

[19]    *See, e.g.*, *Pierce ex rel. Pierce v. Sullivan West Central Sch. Dist.*, 379 F.3d 56, 57 n.3 (2d Cir. 2004) (noting that school district had immunity from punitive damages in a § 1983 claim).

[20]    *See Brantley v. City of Macon*, 390 F. Supp. 2d 1314, 1332 (M.D. Ga. 2005) ("Government entities are similarly 'exempt from punitive damages under Title VII.' ") (quoting *Scott v. Estes*, 60 F. Supp. 2d 1260, 1274 (M.D. Ala. 1999) and 42 U.S.C. § 1981a(b)(1)).

59

AO 72A
(Rev.8/8
2)

Accordingly, the Court **RECOMMENDS** that Defendants' construed motion for judgment on the pleadings be **GRANTED WITH PREJUDICE** in Defendants' favor on Plaintiffs' punitive damages claims.

Since the District Court may disagree with the above discussion and it appears that Defendants seek dismissal of the entire amended complaint, not just the portions brought against the individual Defendants, the Court addresses Defendants' arguments below that: (1) Plaintiffs' amended complaint constituted a shotgun pleading; and (2) Plaintiffs failed to comply with Rule 10 and the District Court's Order.

### C.    Shotgun Pleading

Defendants argue that Plaintiffs' complaint is a shotgun pleading, which allows the District Court to dismiss the complaint.  [Doc. 45 at 15].

In fashioning the Federal Rules of Civil Procedure, the drafters:

assumed that complaints would be drafted as clearly and definitively as possible, so that the defendant could understand the cause(s) of action the plaintiff was asserting and frame a responsive pleading, and the district court, having a clear and definitive response before it, could recognize the parties' claims and defenses, identify the issues of fact to be litigated, and proceed to a just result.

*Davis v. Coca Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008).  A lawsuit brought with a shot gun pleading "confounds these assumptions."  *Id.*  A shotgun

60

AO 72A
(Rev.8/8
2)

pleading is one "that incorporate[s] every antecedent allegation by reference into each subsequent claim for relief." *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). The Eleventh Circuit has "roundly, repeatedly, and consistently condemn[ed]" shotgun pleadings for years. *Davis*, 516 F.3d at 979. These types of pleadings "wreak havoc on the judicial system." *Wagner*, 464 F.3d at 1279 (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001)). Most recently, the Eleventh Circuit has rather forcefully had this to say about shotgun pleadings:

> The unacceptable consequences of shotgun pleading are many. First, and perhaps foremost, shotgun pleading inexorably broadens the scope of discovery, much of which may be unnecessary. . . .
>
> . . .
>
> Second, in addition to delaying a just disposition of the case at the undue expense of one or both of the parties, shotgun pleadings, if tolerated by the court, lessen the time and resources the court has available to reach and dispose of the cases and litigants waiting to be heard. . . .
>
> Third, shotgun pleadings wreak havoc on appellate court dockets. . . .
>
> Fourth, the mischief shotgun pleadings causes undermines the public's respect for the courts-the ability of the courts to process efficiently, economically, and fairly the business placed before them. . . .
>
> . . .

61

*Davis*, 516 F.3d at 981-82.  As a result, "[w]hen faced with a shotgun pleading, the trial court, whether or not requested to do so by the party's adversary, ought to require the party to file a repleader."  *Wagner*, 464 F.3d at 1279; *see also Davis*, 516 F.3d at 983-84.

The Court concludes that the shotgun-nature of Plaintiff's initial complaint was corrected in the amended complaint.  First, and most importantly, Count 1 of the amended complaint has now clearly identified which individual Defendants are liable for each Plaintiffs' termination.  Although Count 1 in the initial complaint broadly asserted § 1983 claims against Defendants,  [Doc. 1 ¶¶ 87-89], Count 1 in the amended complaint contains individual paragraphs identifying the individual Defendants who were involved in the terminations of each Plaintiff, [*see* Doc. 31 ¶¶ 88-98].  The Court and the parties now can clearly determine who is being sued for each Plaintiff's termination.  Second, Counts 2 and 3 provide clear notice about the basis of liability against the FCSD.  [*See* Doc. 31 ¶¶ 99-106].  As a result, the Court finds that Plaintiffs' amended complaint no longer constitutes an objectionable shotgun pleading because it is sufficiently clear to allow (1) Defendants to understand Plaintiffs' causes of action and to frame responsive pleadings and (2) the Court to recognize "the parties' claims

AO 72A
(Rev.8/8
2)

and defenses, identify the issues of fact to be litigated, and proceed to a just result."

*See Davis*, 516 F.3d at 979.

### D.    *Rule 10 and the District Court Order*

Defendants argue that Plaintiffs' amended complaint should be dismissed for violating Rule 10 and the District Court's order.  First, they assert that the amended complaint does not comply with Rule 10 because multiple paragraphs relate to a lengthy recitation of facts related to more than one occurrence or topic.  [Doc. 45 at 17]. Second, they complain that Count 1 involves multiple factual allegations.  [*Id.* at 18]. Third, Defendants contend that dismissal is appropriate because by ignoring the Court's reference to noncompliance with Rule 10, Plaintiffs ignored the District Court's warning that failure to comply with the Order might result in sanctions, including dismissal.  [*Id.* at 17, 18].

Plaintiffs respond that their amended complaint complies with the District Court's Order.  First, Plaintiffs note that they described how Lovett, Wade, Rooks, and White acted with discriminatory intent.  [Doc. 53 at 6].  Second, Plaintiffs note that they specifically identify which individually named Defendants were involved in each specific decision to terminate each Plaintiff.  [*Id.* at 6-8].  Third, Plaintiffs state that they have corrected Count 1 by alleging which Defendants discriminated against which

63

AO 72A
(Rev.8/8
2)

Plaintiffs. [*Id.* at 9]. Defendants reiterate in their reply brief that Plaintiffs complaint still violates Rule 10 and the District Court's Order. [Doc. 56 at 14-15].

Under FED. R. CIV. P. 10, "[a]ll averments of claim . . . shall be made in numbered paragraphs, the contents of each of which shall be limited as fa as practicable to a statement of a single set of circumstances . . . . Each claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth." FED. R. CIV. P. 10(b) (2006). A complaint should therefore not contain one count to raise a "host of claims based on discrete acts of discrimination . . . against different plaintiffs at different times." *Davis*, 516 F.3d at 980 n.57.

The Court first concludes that Plaintiff's pleading does not require dismissal for violating Rule 10. A separation of claims is required under Rule 10(b) where a separation would facilitate the clear presentation of matters. Here, the Court finds that Count 1 has adequately presented matters by identifying which individual Defendants are allegedly liable under § 1983 for each Plaintiffs' termination. As a result, a separation of the claims is not necessary because the claims are clear.

The Court finds that Plaintiff has not violated Rule 10(b)'s language about limiting paragraphs "as far as practicable to a statement of a single set of

64

circumstances." FED. R. CIV. P. 10(b). The paragraphs in Count 1 are limited to a single set of circumstances, namely the circumstances behind each Plaintiff's termination. The purpose of pleading Rules 8 and 10 is to allow the "adversary to discern what [a plaintiff] is claiming and frame a responsive pleading." *Davis*, *supra*, (quoting *Fikes v. City of Daphne*, 79 F.3d 1079, 1082-83 (11th Cir. 1996)). The paragraphs in Count 1 now provide Defendants (and the Court) with the ability to determine the basis of the Plaintiffs' § 1983 claims against the individual Defendants. The Court therefore finds no violation of Rule 10(b).

Second, the Court concludes that Plaintiffs' amended complaint has not violated the District Court's Order because Plaintiffs did not ignore the Court's concerns about Rule 10. In the Court's prior R&R, which the District Court adopted, the Court cited to Rule 10 because the initial complaint did not clearly identify which Defendants were being held liable for which terminations. [Doc. 28 at 34-35 & n.13]. Plaintiffs' amended complaint corrected this concern as discussed above. The Court therefore finds no violation of the District Court's order based on Plaintiffs' failure to comply with Rule 10 as instructed by the Court.

Since the Court finds that Plaintiffs' amended complaint does not constitute a shotgun pleading and does not violate Rule 10 or the District Court's Order, the entire

65

amended complaint is not subject to dismissal. Thus, even if the District Court ultimately decides to grant Defendants' construed motion for judgment on the pleadings with prejudice, the following claims still remain: (1) Plaintiffs' Title VII race discrimination claims against the FCSD; (2) the Title VII retaliation claims of Plaintiffs Hertwig, McGuire, and Burnett against the FCSD; and (3) Plaintiffs' § 1983 equal protection claims against the FCSD.[21]

### *Conclusion*

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion to dismiss, construed as a motion for judgment on the pleadings, [Doc. 45], be **GRANTED IN PART AND DENIED IN PART**. The Court further **RECOMMENDS** that Defendants Widener and Maddox be **DISMISSED** as Defendants from this case.

**IT IS SO RECOMMENDED,** this the 6th day of May, 2008.

_____

**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[21]    Defendants have not set forth any arguments other than the shotgun-nature of the amended complaint and the Rule 10 and District Court Order violations to warrant dismissal of these other claims.

66

AO 72A
(Rev.8/8
2)